<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KATRINA PARKER**,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**B. SUE FULTON,** *in her Capacity as Chief Administrator of the New Jersey Motor Vehicle Commission*, ***et al.***,<br><br>　　　　　　　　　Defendants. | Civil Action No. 19-8926 (ZNQ) (DEA)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon two separate Motions for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The first Motion for Summary Judgment ("Def's Motion", ECF No. 40) was filed by Defendants B. Sue Fulton, in her official Capacity as Chief Administrator of the New Jersey Motor Vehicle Commission ("Fulton") and New Jersey Motor Vehicle Commission ("NJMVC") (collectively, "State Defendants"). The second Motion for Partial Summary Judgment (ECF No. 41) was filed by Plaintiff Katrina Parker ("Plaintiff").

State Defendants filed a Brief in Support of their Motion ("State Moving Br.", ECF No. 40-1) and a Statement of Material Facts Not in Dispute ("State's SMFND", ECF No. 40-2). Plaintiff Katrina Parker filed a Brief in Opposition to Def's Motion ("Plf.'s Opp'n to State ", ECF No. 46) along with her Statement of Material Facts Not in Dispute ("Plf.'s Resp. SMF ", ECF No.

1

47).  State Defendants filed a Reply Brief in response to Plaintiff's Brief in Opposition ("State's Reply", ECF No. 48).

Plaintiff filed a Brief in Support of her Motion ("Plf.'s Moving Br.", ECF No. 41-1) and a Statement of Material Facts ("Plf's SMFND", ECF No. 41-2).  State Defendants filed a Brief in Opposition to Plaintiff's Motion (ECF No. 45) along with a Statement of Material Facts Not in Dispute (ECF No. 45-1).  Plaintiff filed a Reply Brief in response to State Defendants' Brief in Opposition (ECF No. 49).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will GRANT State Defendant's Motion for Summary Judgment and DENY Plaintiff's Motion for Partial Summary Judgment as moot.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.   PROCEDURAL HISTORY

Plaintiff initiated the instant action against State Defendants by filing a five-count Complaint ("Compl." ECF No. 1") alleging a deprivation of her procedural due process rights under the Fourteenth Amendment[1] (Count One), discrimination under 42 U.S.C. § 1983 (Count Two),  discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count Three), Title II of the ADA, 42 U.S.C. § 12131 (Count Four); and discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count Five).

Plaintiff sought injunctive relief to "restore the P and S endorsements and/or provide pre-reaction review," declaratory judgement that the State Defendants violated her constitutional and statutory rights, compensatory damages and attorney's fees under all counts, and punitive damages

---

[1] U.S. Const. Amend. XIV.

under Count II, § 1983.  (*See generally* Compl.)  On May 7, 2019, State Defendants filed a motion to dismiss.  (ECF No. 7.)  On December 31, 2019, the Court, dismissed Count I; dismissed Count II as to the plaintiff's monetary relief; and dismissed all Counts as to Plaintiff's requested injunctive relief against the NJMVC.  (ECF No. 13.)  The Court permitted Plaintiff to file an amended complaint, but she elected not to file one.

Accordingly, the following claims remain:

- Count Two: Claims under 42 U.S.C. § 1983, seeking injunctive relief against Fulton and declaratory relief against State Defendants

- Count Three: Claims under the Rehabilitation Act, seeking declaratory relief and money damages against State Defendants and injunctive relief against Fulton

- Count Four: Claims under the Americans with Disabilities Act ("ADA", 42 U.S.C. § 12101), seeking declaratory relief and money damages against State Defendants and injunctive relief against Fulton

- Count Five: Claims under the NJLAD, seeking declaratory relief and monetary damages against State Defendants and injunctive relief against Fulton

**B.     UNDISPUTED FACTS**

The Court has found the following facts to be relevant and undisputed.

Plaintiff is a hearing-impaired individual who applied for a hearing exemption from the Federal Motor Carrier Safety Administration ("FMCSA") to exempt her from the FMCSA's commercial driver license ("CDL") hearing requirements pursuant to 49 C.F.R. § 39.41(b)(11). (State's SMFND ¶¶ 1, 2; Pl's Resp. SMF ¶¶ 1,2.)  On September 2, 2016, the FMCSA approved Plaintiff's application and issued a hearing exemption ("Hearing Exemption", ECF No. 40-7.) (State's SMFND ¶ 4; Plf.'s Resp. SMF ¶ 4.)

3

> The Hearing Exemption provided the following restrictions:
>
> 1. If you have a CDL, your State motor vehicle department must remove the "intrastate only" restriction from your license.
> 2. You must keep the exemption and a copy of the medical examiner's certificate on your person while operating a [Commercial Motor Vehicle ("CMV")]. Upon request, these documents must be presented to a duly authorized Federal, State, or local law enforcement official.
> 3. You must retain copies of both the medical examiner's certificate and the exemption in your driver qualification file.
> 4. You must report any crashes or accidents as defined in 49 CFR 390.5 to FMCSA.
> 5. You must report all citations and convictions for disqualifying offences [sic] under 49 CFE 383 and 391.
> 6. You are prohibited from operating a motorcoach or bus with passengers in interstate commerce.
>
> The enclosed exemption is valid for operation of a CMV only within the United States for purpose of interstate commerce. It does not exempt the driver from the physical qualification standards of any bordering jurisdiction.

(Hearing Exemption, ECF No. 40-7.)  On October 17, 2017, the NJMVC issued a passenger enforcement ("P endorsement") and a school bus endorsement ("S endorsement") (collectively, "P and S endorsements") to Plaintiff's CDL, which permitted her to drive a school bus.  (State's SMFND ¶ 12; Plf.'s Resp. SMF ¶ 12.)

On July 6, 2018, Carl Rosatti, a supervisor in the NJMVC's Driver Review Bureau, received a telephone call from a transportation company inquiring whether Plaintiff was permitted to drive a school bus with the Hearing Exemption she obtained.  (State's SMFND ¶ 13; Plf.'s Resp. SMF ¶ 13.)  Following this call, the NJMVC internally investigated the matter and consulted with subject matter experts with the NJMVC.  (State's SMFND ¶ 14; Plf.'s Resp. SMF ¶ 14.)

On August 9, 2018, the NJMVC sent Plaintiff a notice that the P and S endorsements were to be removed from her CDL effective August 28, 2018.  (State's SMFND ¶ 20; Plf.'s Resp. SMF ¶ 20.)

4

## II. Jurisdiction

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because Plaintiff's claims under § 1983, the Rehabilitation Act, and the ADA arise under the laws of the United States. The Court has supplemental jurisdiction over Plaintiff's state law NJLAD claim under 28 U.S.C. § 1367.

## III. LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id*. (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id*. (quoting *Katz*

5

*v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

IV.  **DISCUSSION**

    A.  **WHETHER PLAINTIFF WAS QUALIFIED TO RECEIVE P AND S ENDORSEMENTS**

State Defendants argue that Plaintiff's interstate CDL and endorsements are subject to FMCSA's physical qualification standards, not the State's standards. (State Moving Br. at 6.) State Defendants assert that the NJMVC should not have issued P and S endorsements because they were prohibited by the Hearing Exemption's express language. (*Id.* at 7.) The Hearing Exemption was only valid for use with an interstate CDL that is subject to FMCSA's physical qualification requirements. (*Id.*) State Defendants contend that Plaintiff was not qualified to receive the P and S endorsements based on the terms of the hearing exemption and federal law. (*Id.* at 8.) Further, State Defendants assert that failing to remove the P and S endorsements would have put the NJMVC at risk of losing Motor Carrier Safety Assistance Program ("MCSAP") funding. (*Id.*)

In opposition, Plaintiff argues that she was qualified to receive the P and S endorsements. (Plf.'s Opp'n to State at 3.) Plaintiff contends that State Defendants' witnesses admit that operating a motor coach with passengers in "interstate" commerce was the only restriction on her Hearing Exemption, which does not prohibit her from operating a motor coach with passengers "intrastate" or obtaining P and S endorsements. (*Id.* at 4.) Plaintiff argues that if the Hearing Exemption prohibited her from obtaining the P and S endorsements, then she would have been in violation of the Hearing Exemption when she drove a school bus in New Jersey. (*Id.*) Plaintiff

6

maintains that State Defendants' CDL coordinator admitted that he has no evidence or reason to believe that Plaintiff was violating the condition in her Hearing Exemption. (*Id*. at 4–5.) Plaintiff argues that if State Defendants claim that federal law or her Hearing Exemption expressly prohibit her from obtaining the P and S endorsements, then State Defendants or the FMCSA should have revoked her underlying CDL as well. (*Id*. at 5.) Plaintiff asserts that because her underling CDL and her Hearing Exemption were never revoked, she did not violate her Hearing Exemption or federal law and it "follows that neither federal law nor her Hearing Exemption expressly prohibit her from obtaining the P and S endorsements and driving a bus intrastate." (*Id*. at 6.)

Plaintiff additionally argues that State Defendant's blanket policy excluding deaf individuals from obtaining New Jersey's P and S endorsements violates the Constitution and federal and state laws. (Plf.'s Opp'n to State at 6.) Plaintiff contends that State Defendants do not operate an exemption program for intrastate licenses, unlike the FMCSA. (*Id*. at 7.) Plaintiff argues that because there is no way for her or other deaf individuals to obtain the P and S endorsements, such a "blanket policy violates the Constitution and federal and state laws." (*Id*.)

In reply, State Defendants reiterate that the Hearing Exemption was only valid for an interstate CDL and prohibited issuance of the P and S endorsements on an intrastate only CDL by its express language. (State's Reply at 2.) State Defendants again maintain that Plaintiff's CDL was subject to Federal, not State law. (*Id*. at 3.) They also clarify that Plaintiff never applied for, nor received, an intrastate-only CDL. (*Id*.)

The FMCSA is authorized to develop and enforce effective, compatible, and cost-beneficial regulations and practices for motor carrier, commercial motor vehicle, and driver safety. 49 U.S.C.A. § 31100. The FMCSA's regulations "prescribe minimum safety standards for commercial motor vehicles." 49 U.S.C.A. § 31136. Accordingly, the FMCSA has issued

7

regulations, including setting the minimum standards for CDL applications, 49 C.F.R. § 383.71, and the physical qualifications for drivers, 49 C.F.R. § 391.41.

Further, the FMCSA administers the Motor Carrier Safety Assistance Program ("MCSAP"). MCSAP is a "federal grant program that provides financial assistance to states to reduce the number and severity of accidents and hazardous materials incidents involving commercial motor vehicles." 49 C.F.R. § 350.101(a) and 49 U.S.C. § 31102. A state participating in MCSAP agrees to adopt and enforce CMV safety "regulations, standards, and orders that are compatible with the regulations, standards, and orders of the Federal government." 49 U.S.C. § 31102(c)(1). Accordingly, a state participating in MCSAP must enforce laws and regulations that meet the minimum standards set by the FMCSA regulations or risk losing MCSAP funding. *See* 49 U.S.C. §§ 31314, 31311(a)(1).

The FMCSA requires drivers who are applying or renewing their CDL to certify the type of commerce (interstate or intrastate) in which the driver intends to participate and the type of transportation or operation in which the driver intends to engage to determine whether the FMCSA or state physical qualifications apply to a CDL. 49 C.F.R. §§ 383.71 (b)(1) and (d)(1). If the driver is subject to the physical requirements for drivers, the driver must obtain a medical examiner's certificate in which a qualified medical examiner certifies that the driver meets the physical qualification standards. 49 C.F.R. §§ 383.71 (b)(1) and (d)(1); 49 C.F.R. §§ 391.41(a)(1)(i); and 49 C.F.R. § 391.43.

49 C.F.R. § 391.41 sets forth FMCSA's physical qualification standards. Under the FMCSA, if a driver does not meet the physical qualification requirements, the driver can request an exemption. 49 U.S.C. §§ 31136(e), 31135(b); 49 C.F.R. § 381.300(c)(5). A driver who is granted an exemption is required to comply with all the terms and conditions of that exemption.

49 C.F.R. § 381.330(a).  Receiving an exemption and complying with the medical examination requirement renders the driver physically qualified to drive a CMV.  49 C.F.R. § 391.41(3)(2).  If an exemption is granted, "no state shall enforce any law or regulation that conflicts with or is inconsistent with the . . . exemption . . . with respect to a person operating under the . . . exemption."  49 U.S.C.A. 31135(e).

In New Jersey,

> [t]he Chief Administrator of the Motor Vehicle Commission may not issue a passenger endorsement or may revoke or suspend the passenger endorsement of any person when it is determined that the applicant or holder of such passenger endorsement has . . . [f]ailed to meet the medical and physical qualifications set forth in the regulations of the United States Department of Transportation, Federal Motor Carrier Safety Administration, 49 CFR 391.41, as amended and supplemented.  Pursuant to N.J.A.C. 13:60–1.1 et seq., failure to meet the medical and physical qualifications of this paragraph will subject the applicant or holder of such passenger endorsement to denial, revocation, or suspension of that person's underlying CDL, as well as his or her passenger endorsement.

N.J.A.C. 13:21-14.5 (c)(11).

Importantly, N.J.A.C. 13:60-1.3(d) provides "[w]henever the term "interstate" is used in the Federal Motor Carrier Safety Regulations, adopted and incorporated, by reference, herein, and all supplements and amendments thereto, it shall, for the purpose of this chapter, mean or include both "interstate" and "intrastate" transportation in commerce[.]"  N.J.A.C. 13:60-1.3(g) also provides that "[t]he provisions and requirements of these regulations as well as the Federal Motor Carrier Safety Regulations . . . are applicable to all motor vehicles . . . engaged in transportation in interstate and intrastate commerce or operating in interstate and intrastate commerce[.]"

Further, the State of New Jersey has incorporated Federal Motor Carrier Safety Regulations.  See N.J.A.C. 13:60-1.3; see also Rafanello v. Taylor-Esquivel, 465 N.J. Super. 304 (App. Div. 2020).  Accordingly, because "no state shall enforce any law or regulation that conflicts

with or is inconsistent with the . . . exemption . . . with respect to a person operating under the . . . exemption" 49 U.S.C.A. 31135(e), and a state participating in MCSAP must enforce laws and regulations that meet the minimum standards set by the FMCSA regulations or risk losing MCSAP funding, *see* 49 U.S.C. §§ 31314, 31311(a)(1), NJMVC was not permitted to issue P and S endorsements to Plaintiff's license. Plaintiff applied for and received the Hearing Exemption from the FMCSA that exempted her from the FMCSA's CDL hearing requirements set forth at 49 C.F.R. 391.41(b)(11). (State's SMFND ¶¶ 2, 4; Plf.'s Resp. SMF ¶¶ 2, 4.) The Hearing Exemption provided it was "valid for operation of a CMV only within the United States for the purpose of interstate commerce." (ECF No. 40-7.) Accordingly, Plaintiff's Hearing Exemption was only valid for an interstate CDL. As noted above, the Hearing Exemption itself explicitly prohibits Plaintiff from "operating a motorcoach or bus *with passengers* in interstate commerce." (Hearing Exemption at 1) (emphasis added). P and S endorsements on an interstate CDL conflict with this prohibition by permitting Plaintiff to carry passengers in interstate commerce. The Court therefore finds that there is no genuine issue of material fact, and that Plaintiff did not qualify for the P and S endorsements erroneously issued by the NJMVC.[2]

### B.  PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS

State Defendants argue that Plaintiff's procedural due process claim must fail because she does not have a property interest in the P and S endorsements. (State Moving Br. at 9.) State

---

[2] Plaintiff contends that Defendants removed her P and S endorsements not because of the Hearing Exemption or federal law, but rather, because of Defendants' alleged blanket policy excluding deaf individuals from obtaining these endorsements. (*See* Opp'n Br. at 10–11.) Such an argument, however, is not relevant to the Court's conclusion here. Because the Court finds no genuine issue of material fact that the Hearing Exemption and federal law prevented Defendant from obtaining the P and S endorsements, it will reject Plaintiff's pretext argument. *See Johnson v. Phila. Hous. Auth.*, 218 F. Supp. 3d 424, 434 (E.D.Pa. 2016); *see also Hughes v. Bryn Mawr Trust Co.*, Civ. No. 19-2417, 2022 WL 1553495, at *8 (E.D.Pa. Oct. 27, 2022) (finding plaintiff failed to rebut Defendant employer's non-discriminatory explanation for its decision to terminate her and rejecting her pretext argument); *Houston v. Dialysis Clinic, Inc.*, Civ. No. 13-4461, 2015 WL 3935104, at * 9 (D.N.J. June 26, 2015).

Defendants further argue that Plaintiff was not entitled to a hearing prior to the removal of the P and S endorsements because there were no factual nor legal issues. (*Id*. at 10.)

In opposition, Plaintiff asserts that the Court already determined, in deciding State Defendant's Motion to Dismiss, that State Defendants failed to show that she was expressly prohibited from receiving the P and S endorsements under New Jersey law. (Plf.'s Opp'n to State. at 13.) Plaintiff contends that even if State Defendants issued her P and S endorsements in error, such an error does not deprive her of the existence of her property interest. (*Id*.) Plaintiff argues that because State Defendants have failed to show that she was expressly prohibited from receiving the P and S endorsements, she had a protected property interest in them when they were issued to her. (*Id*. at 14.) Plaintiff contends that State Defendants' failure to provide her with a pre-termination hearing violated her procedural due process rights. (*Id*. at 15.)

In reply, State Defendants reiterate that because Plaintiff does not have a protected property interest in the P and S endorsements, she does not have a protected property interest. (State's Reply at 7.) State Defendants contend that under New Jersey law, an evidentiary hearing was not required here. (Id. at 8.) State Defendants argue that there were no issues of fact or law regarding Plaintiff's entitlement to the P and S endorsements. (*Id*.)

To prevail on "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (internal quotation marks and citation omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules

or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. State law does not define the parameters of due process for the purposes of the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Rather, federal law defines those parameters. *Witkowski v. Welch*, 173 F.3d 192, 205 (3d Cir. 1999).

Here, the NJMCVC issued Plaintiff's P and S endorsements in violation of the Hearing Exemption and federal law. She does not have a "legitimate claim of entitlement" to the endorsements and therefore does not a protected property interest in them. *See Board of Regents of State Colls.*, 408 U.S. at 577. . Accordingly, Plaintiff's Due Process claim must fail.

## C.   PLAINTIFF'S CLAIMS UNDER   THE REHABILITATION ACT AND NJLAD

State Defendants assert that § 504 of the Rehabilitation Act (the "RA") prohibits discrimination against qualified individuals with a disability. (State Moving Br. at 11.) State Defendants argue that because Plaintiff was not qualified to receive the P and S endorsements under the express terms of the Hearing Exemption and federal law, that Plaintiff's claims under the Rehabilitation Act should be dismissed. (*Id*. at 12.) State Defendants additionally argue that Plaintiff's ADA and NJLAD claims should be dismissed for the same reason. (*Id*.)

In opposition, Plaintiff argues that she was qualified for the P and S endorsements under the RA, ADA, and NJLAD. (Plf's Opp'n to State at 15.) Plaintiff reiterates that neither the Hearing Exemption nor federal law prohibit her from obtaining the P and S endorsements. (*Id*. at 16.)

12

Section 504 (29 U.S.C. § 794) of the RA and NJLAD are, for the most part, interpreted consistently with the ADA. *See Chisolm v. McManimon*, 275 F.3d 315, 324 n.9 (3d Cir. 2001).

"The standard under these three statutes requires [Plaintiff] to show she (1) has a disability, (2) was otherwise qualified to [receive the P and S endorsements], and was denied the [endorsements] because of [her] disability." *K.N. v. Gloucester City Bd. of Ed.*, 379 F. Supp. 3d 334, 345 (3d Cir. 2019) (internal quotation and citation omitted).

Here, the parties dispute the second element: whether Plaintiff was otherwise qualified to receive the endorsements. As the Court has already concluded, Plaintiff was not qualified to receive the P and S endorsements per the Hearing Exemption and federal law. Accordingly, Plaintiff's ADA, RA, and NJLAD claims must also fail.

**D.   PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff seeks partial summary judgment on liability, declaratory relief, injunctive relief, and nominal damages for her disability discrimination claims under Title II of the ADA, RA, and NJLAD, and constitutional claims under 42 U.S.C. § 1983. (Plf.'s Moving Br. at 2.) The Court, however, already found no genuine issue of material fact as to Plaintiff's claims under the ADA, RA, and NJLAD in favor of State Defendants. Plaintiff's Motion as to her claims under the ADA, RA, and NJLAD will therefore be denied.

Additionally, the Court has already found no genuine issue of material fact as to Plaintiff's Due Process claims in favor of State Defendants. Accordingly, the Court will deny Plaintiff's Motion with respect to her Due Process claims.

Further, Plaintiff seeks summary judgment as to her claims under the Equal Protection Clause. (*Id*. at 24.) Plaintiff, however, does not allege an Equal Protection claim in her Complaint.

Count Two vaguely asserts a violation of federal rights under the Fourteenth Amendment.[3] (Compl. ¶ 35.)  However, read in the context of the remaining allegations in the Complaint, it appears Plaintiff only asserts Due Process violations.  (*Id*. at 24; *see* Compl. ¶ 2 (seeking "declaratory, injunctive, and equitable relief . . . to redress Defendants' deprivation of Plaintiff's Due Process Right under the Fourteenth Amendment," but not seeking relief as to equivalent Equal Protection Right); and Prayer for Relief (praying for "declaratory judgment . . . stating that Defendants' policies, procedures, and/or practices have subject Plaintiff to a deprivation of her Due Process Rights under the Fourteenth Amendment," but not a declaratory judgment regarding a deprivation of any Equal Protection Right).)  The Court will therefore deny Plaintiff's Motion with respect to her Equal Protection Clause argument because such a claim is not raised in her Complaint.[4]  *See Marshall v. Penn Twp., Pa*., 458 F. App'x 178, 181 (3d Cir. 2012).

## V.     CONCLUSION

For the reasons stated above, the Court will GRANT State Defendant's Motion for Summary Judgment, and  Plaintiff's Motion for Partial Summary Judgment will DENIED.  An appropriate Order will follow.

Date: **March 15, 2023**

s/ Zahid N. Quraishi  
**ZAHID N. QURAISHI**  
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court acknowledges that out of an abundance of caution, it previously construed Count Two as possibly alleging an Equal Protection violation in the context of considering Eleventh Amendment immunity.  (*See* ECF No. 12 at 11.)  However, upon further review of the Complaint, and the parties' submissions on summary judgment, the Court now concludes that no Equal Protection violation has been alleged.

[4] For the same reasons, the Court will also reject Plaintiff's argument that State Defendants' Motion is "at best a motion for partial summary judgment because it fails to move for judgment on [Plaintiff's] Equal Protection claim under the Fourteenth Amendment."  (Plf.'s Opp'n to State at 3.)